# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRMA GUADALUPE MICHEL BARAJAS, | Case No. 1:22-cv-01444-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| FRANK BISIGNANO, Commissioner of Social Security[1], | |
| Defendant. | (Doc. 1) |
| _____ / | |

## I.    INTRODUCTION

Plaintiff Irma Guadalupe Michel Barajas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.    FACTUAL BACKGROUND

On August 6, 2020, Plaintiff protectively filed a claim for DIB payments, alleging she

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration.  *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07.  He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 11.)  On April 13, 2026, this case was reassigned to the undersigned.  (*See* Doc. 22.)

became disabled on April 30, 2019, due to severe arthritis in her spine and hips, damaged discs, chronic pain, and hypertension.  (Administrative Record ("AR") 21, 201, 220.)

Plaintiff was born in 1970 and was 49 years old on the alleged disability onset date.  (AR 30, 200, 219, 410, 434, 465.)  She has at least a high school education and previously worked as a farm worker.  (AR 30, 421–22.)  From the second quarter of 2020 through the second quarter of 2021, Plaintiff received unemployment benefits.  (AR 408–409.)

**A.     Relevant Evidence of Record[3]**

**1.     Medical Evidence**

In January 2020, Plaintiff attended a follow up appointment to discuss her high cholesterol. (AR 737–39.)  She reported using a stationary bicycle for 30 minutes three to four times per week. (AR 737.)  At an appointment in February 2020 to discuss her high blood pressure, Plaintiff relayed that she purchased a treadmill and a bicycle and that she had been exercising 45 minutes four to five times per week.  (AR 752.)

Plaintiff presented to a physical therapy appointment with back pain she rated "8/10" in March 2020.  (AR 659.)  She reported walking a few miles per day and using a cardio machine at home.  (AR 659.)  That same month, Plaintiff presented to Family Nurse Practitioner ("FNP") Amy Marks complaining of back pain she rated at "5/10."  (AR 764–67.)  On examination, Plaintiff had tenderness to palpation and pain with active range of motion in her right lower back, no edema, and full range of motion in her extremities.  (AR 766.)  She reported that her back pain is increasing, and that her treatment regimen of physical therapy and medications was "slightly helping."  (AR 767.) FNP Marks prescribed Tramadol for pain.  (AR 767.)

In June 2020, Plaintiff was seen by FNP Marks to treat high blood pressure.  (AR 818–21.) She reported "doing well."  (AR 818.)  Physical examination showed full range of motion in Plaintiff's extremities.  (AR 820.)

Plaintiff complained of bilateral hand numbness, wrist pain, and intermittent tingling in her feet in August 2020.  (AR 844–46.)  On examination, she had full range of motion of bilateral wrists

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

and fingers, intact sensation, positive Tinel sign and Phalen test, and full grip strength.  (AR 845.) She was assessed with bilateral carpal tunnel syndrome due to "overuse during crochet" and provided wrist splits.  (AR 845.)

In October 2020, Plaintiff presented to the emergency department complaining of abdominal pain and was diagnosed with acute diverticulitis.  (AR 903–34.)  She denied back pain, joint pain, muscle pain, decreased range of motion, or numbness.  (AR 910.)  On examination, Plaintiff demonstrated tenderness in her abdomen, normal range of motion and strength, with no tenderness or swelling.  (AR 910–11.)

Plaintiff underwent electrodiagnosis testing of her hands in November 2020, which showed evidence of "mild compression neuropathy (Carpal Tunnel Syndrome) of the right median nerve across the wrist."  (AR 1087.)  That same month, Plaintiff presented for a comprehensive internal medicine evaluation by Roger Wagner, M.D.  (AR 942–46.)  She complained of hypertension, low back pain, and right lateral pelvis pain.  (AR 942.)  She also noted that she "occasionally has some hand numbness and wakes up with [her] hands numb."  (AR 943.)  She reported that wrist braces "help some."  (AR 943.)  She also reported that she does her own cooking and cleaning, drives, shops, performs her own activities of daily living without assistance, and walks around her neighborhood a total distance of about four blocks.  (AR 943.)

On examination, Dr. Wagner found that Plaintiff easily got up from her chair, walked at normal speed, sat comfortably, and was able to get on and off the examination table easily.  (AR 943.)  She had good dexterity and flexibility, as she was able to bend at her waist to take off and put on her shoes and socks, oppose fingertips to thumb tips, and pick up a paperclip.  (AR 943.)  Dr. Wagner noted that Tinel's sign, Phalen's test, and straight leg raise results were negative, and strength (including grip strength), sensation, and neurological function were normal.  (AR 943–45.) He found Plaintiff was able to walk on toes and heels without difficulty and had normal station and gait.  (AR 944.)

In February 2021, Plaintiff presented to FNP Marks for a medication management appointment with chronic pain she rated at a "5/10."  (AR 959–63.)  Her functional status was indicated as "improved" since starting the medication, and she reported that it was "helping to

control her pain." (AR 959.)  She also reported she had a lumbar injection earlier that month and was "feeling much better." (AR 962.)  On examination, Plaintiff had tenderness to palpation and pain with active range of motion in her right lower back, no edema, and full range of motion in her extremities. (AR 961.)  FNP Marks decreased the dosage of her pain medication. (AR 961, 962.)

That next month, Plaintiff reported to FNP Marks that her pain was rated "4/10" and that she was "doing well" on the reduced dosage medication, which was "helping for when she does daily activity." (AR 1107, 1110.)  Her physical examination results were the same as the month prior, with tenderness to palpation and pain with active range of motion in her right lower back, no edema, and full range of motion in her extremities. (AR 1109.)

In May 2021, Plaintiff presented for an appointment to treat her back pain rated at a "7/10" with medication and a "10/10" without. (AR 1088–90.)  She indicated her symptoms were aggravated by standing, walking, and movement. (AR 1088.)  She also reported that Tramadol makes her dizzy if she takes it during the daytime. (AR 1088.)  On examination, Plaintiff showed tenderness of lumbar paraspinals, with positive straight leg raising test, near normal flexion range of motion "without complaint," and normal strength. (AR 1089.)  Her gait was noted to be "very antalgic" and "guarded." (AR 1089.)

## 2.    Opinion Evidence

In September 2020, FNP Marks completed a "Physical Medical Source Statement." (AR 898–901.)  FNP Marks opined that Plaintiff could sit, stand, and walk less than two hours in an eight-hour day; occasionally lift less than 10 pounds; needs to shift positions at will; could rarely twist, crouch, and climb ladders; could occasionally stoop and climb stairs; had front and overhead reaching limitations bilaterally; would be off task 20% of the workday and absent more than four days per month; and would require unscheduled breaks every 30 minutes to lie down. (AR 899–901.)

Following his examination of Plaintiff in November 2020, Dr. Wagner opined that Plaintiff had no sitting, environmental, or manipulative limitations, and did not require an assistive device. (AR 946.)  Dr. Wagner further opined that Plaintiff could stand or walk up to six hours, lift and carry 50 pounds occasionally and 25 pounds frequently; and could frequently perform postural activities.

4

(AR 946.)

That same month, state agency medical consultant S. Lee, M.D., opined that Plaintiff could perform medium exertional work with postural limitations and no manipulative, visual, communicative, or environmental limitations. (AR 212–14.) This opinion was adopted upon reconsideration by state agency consultant K. Lee, M.D, in March 2021. (AR 230–32.)

### 3.    Plaintiff's Statements

In August 2020, Plaintiff completed an "Exertion Questionnaire." (AR 427–29.) She reported pain in her back and right leg that impaired her ability to walk, and stated that her medication causes dizziness, fatigue, and drowsiness. (AR 427.) Plaintiff stated that she vacuums, drives, cleans the kitchen and bathroom, and shops for groceries, but needs breaks to do so. (AR 427, 428, 429.) She reported an inability to lift anything heavy. (AR 428.)

Plaintiff directed the completion of an "Pain Questionnaire" in February 2021, in which she complained of middle and lower back pain. (AR 442–44.) According to Plaintiff, her pain is exacerbated by prolonged standing and going from a seated to a standing position. (AR 442.) She reported that medications relieve the pain "a bit," but that it causes drowsiness and poor memory. (AR 442.) She indicated her daily activities include washing dishes and picking up around the house, and that she can do other light housekeeping chores such as dusting and cooking without assistance. (AR 443, 444.) Plaintiff stated she can walk two blocks, stand for 30 minutes, and sit for 45 minutes at a time. (AR 444.)

### B.    Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on December 10, 2020, and again on reconsideration on March 17, 2021. (AR 21, 258–63, 265–70.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 271–334.) At the hearing on September 17, 2021, Plaintiff appeared by telephone with counsel and a Spanish interpreter and testified before an ALJ as to her alleged disabling conditions. (AR 185–92.) A Vocational Expert ("VE") also testified at the hearing. (AR 192–99.)

### 1.    Plaintiff's Testimony

Plaintiff testified that she stopped working due to back pain that caused difficulty walking.

(AR 187.)  She performs stretching exercises learned at physical therapy and uses a cane.  (AR 187.) According to Plaintiff, she experiences pain and numbness in her wrists and numbness, inflammation, swelling, and decreased strength of both hands.  (AR 189.)  She testified that she sleeps with the wrist braces provided by her doctor.  (AR 190.)  Due to her back pain, she can only stand for 15 to 20 minutes before needing to sit.  (AR 190.)  She also testified she has been to the hospital twice over two years for diverticulitis.  (AR 191.)  She also has shoulder numbness when reaching overhead and can lift a five-pound weight in each hand.  (AR 191–92.)

### 2. Vocational Expert's Testimony

According to the VE, Plaintiff had past work as a hand packager, Dictionary of Operational Titles (DOT) code 920.507-010, performed at the medium exertional level with a specific vocational preparation (SVP)[4] of 2; and poultry picking machine tender, DOT code 525.685-026, with an SVP of 2 and generally performed at the light level of exertion (actually performed at the medium level of exertion).  (AR 193–94.)  The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history.  (AR 194.)  The VE was also to assume this person could perform medium work, with occasional stooping and crouching.  (AR 194.)  The VE testified that such a person could perform both of Plaintiff's past work positions.  (AR 194.)

Considering a second hypothetical, where a person would be able to perform light exertional work with occasional climbing, stooping, crouching, crawling; occasional operation of hand controls with the dominant right hand; frequent handling and fingering with the dominant right hand; frequent pushing and pulling with the left lower extremity; occasional exposure to extreme cold humidity and vibration; and no work at unprotected heights, the VE testified that Plaintiff could perform only the past work position of poultry picking machine tender, and could perform other light exertional jobs in the national economy such as mail clerk, DOT code 209.687-026, with a SVP of 2; office helper, DOT code 239.567-010, with a SVP of 2; and information clerk, DOT code 237.367-018, with a SVP of 2.  (AR 194–96.)  According to the VE, considering a third hypothetical involving a person

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id*.

limited to sedentary exertional work, with the option to stand for 10 minutes after every 30 minutes of sitting (as long as the individual is not off task or away from the workstation); occasional twisting at the waist level and frontal reaching bilaterally; frequent overhead reaching bilaterally; would require a 15- minute unscheduled break every 30 minutes and likely be absent from work one day per month on a consistent basis, there would be no work such a person could perform. (AR 196–197.)

The VE considered a fourth hypothetical posed by Plaintiff's counsel, which included an additional limitation to the second hypothetical that the individual would be limited to standing or walking four out of eight hours a day, and testified that while it would rule out poultry picking machine tender, such a person could perform the other occupations identified. (AR 197.) Finally, considering a fifth hypothetical, the VE testified that adding the additional limitation to the fourth hypothetical of only being able to lift ten pounds, occasionally or frequently, would be work preclusive at the light exertional level. (AR 197–98.)

**C.    The ALJ's Decision**

In a decision dated September 28, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–31.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 23–31.) The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2024, and she had not engaged in substantial gainful activity since April 30, 2019, the alleged onset date (step one). (AR 23–24.) At step two, the ALJ found Plaintiff's following impairments to be severe: mild degenerative disc disease of the thoracic and lumbar spine; tendinitis of the left hip; diverticulitis; right carpal tunnel syndrome; diabetes mellitus; and mild degenerative disc disease of the cervical spine. (AR 24–25.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 26.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's

assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light exertional work as defined in 20 CFR [§] 404.1567(b), except with occasional climbing, stooping, crouching, and crawling; occasional operation of hand controls with the dominant right hand; frequent handling and fingering with the dominant right hand; frequent pushing and pulling with the left lower extremity; occasional exposure to extreme cold, humidity, and vibration; and no work at unprotected heights.

(AR 26–29.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 27.)

Based on the RFC assessment, the ALJ determined that Plaintiff could perform her past relevant work as a poultry picker machine tender (step 4).  (AR 30.)  The ALJ also made the alternative finding that Plaintiff could perform a significant number of other jobs in the national economy (step five).  (AR 30–31.)  The ALJ concluded Plaintiff was not disabled from April 30, 2019, through the date of the decision.  (AR 31.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 9, 2022.  (AR 1–9.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

### III.    LEGAL STANDARD

#### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However,

RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

"[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett,* 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than

a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the manipulative limitations included in the RFC lack substantial evidence, the ALJ erred in their assessment of the medical opinion of FNP Marks, and the ALJ further failed to articulate clear and convincing reasons for discounting her testimony regarding her

subjective complaints. (Doc. 17.) The Commissioner responds that the RFC is free from error, the ALJ's consideration of the medical opinion was proper and supported by substantial evidence, and the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 21.) The Court finds no harmful error in the ALJ's decision and will affirm.

**A.      The ALJ's Assessment and Inclusion of Manipulative Limitations in the RFC is Harmless Error**

**1.      The Manipulative Limitations Are Not Supported by Substantial Evidence**

A claimant's RFC is "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating the RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). As set forth above, the ALJ's RFC finding in this case included the manipulative limitations of occasional operation of hand controls and frequent handling and fingering with the dominant right hand. (AR 26.)

Treating provider FNP Marks, consultative examiner Dr. Wagner, and State agency physicians Drs. S. Lee and K. Lee provided medical opinions regarding the effects of Plaintiff's impairments. (*See* AR 899–901 (Marks), 946 (Wagner), 212–14 (S. Lee), 230–32 (K. Lee).) None of these opinions included any manipulative limitations.

The ALJ found each of these medical opinions "not persuasive" in part because they were inconsistent with the overall medical record. (*See* AR 29.) In other words, the ALJ disagreed with all medical opinions in the record concerning Plaintiff's impairments and found that, contrary to the treating provider's, consultative examiner's, and State agency physicians' opinions, Plaintiff's "hand numbness and wrist pain" would result in some work-related manipulative restrictions. (AR 28.) While the absence of a medical opinion is not necessarily fatal, the RFC determination still must be supported by substantial evidence. *See Bradford v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00232-TUC-SHR (JR), 2022 WL 4538569, at *5 (D. Ariz. Aug. 18, 2022).

Here, having rejected all of the medical opinion evidence, the ALJ's assessment and inclusion of these manipulative limitations in the RFC determination appears to have been based solely on their own interpretation of Plaintiff's self-reports and the medical evidence.  Without relying on any medical opinion regarding what work-related restrictions would be appropriate, the ALJ improperly included manipulative limitations in the RFC and concluded these limitations were sufficient to address Plaintiff's hand and wrist impairments.  It is well-settled that an ALJ may not render their own medical opinion and is not empowered to independently assess clinical findings. *See, e.g., Tackett*, 180 F.3d at 1102–03 (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (reasoning that it is improper for the ALJ to act as the medical expert); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings").

The Commissioner is correct that "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work."  (Doc. 21 at 3–4 (quoting *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022)).  However, the ALJ in this case did not simply synthesize the medical evidence and opinions to reach an RFC determination, as they are charged to do.  The ALJ does not explain how, for example, Plaintiff's reports of "bilateral hand numbness" and "wrist pain" provide sufficient indications of her functional limitations and are clear as to their impact on her ability to work.  (AR 27–28 (citing AR 844, 1087).)  The electrodiagnostic testing does indeed show evidence of "mild compression neuropathy (Carpal Tunnel Syndrome) of the right median nerve across the wrist" (AR 1087), but again, it is not clear what functional limitations would result. *See Howell v. Kijakazi*, No. 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (MRIs, radiological studies, and X-rays "generally reflect only the findings, impressions, and medical diagnoses, which are difficult for a lay person to interpret."); *Hurt v. Kijakazi*, No. 3:20-CV-00481-CSD, 2022 WL 444355, at *9–10 (D. Nev. Feb. 14, 2022) ("When the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those

diagnoses to specific residual functional capabilities . . . [the] bare medical findings are unintelligible to a lay person in terms of residual functional capacity.'") (quoting *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 293 (1st Cir. 1986)). Thus, it appears the ALJ formulated an RFC with manipulative limitations based on their interpretation of the medical evidence, which is improper. The ALJ was not qualified to translate the evidence into functional limitations and engage in their "own exploration and assessment" of Plaintiff's impairments. *See McAnally v. Berryhill*, Case No.: 3:18-cv-02272-GPC-RNB, 2020 WL 1443734, at *7 (S.D. Cal. Mar. 25, 2020) (quoting *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).

Without a medical opinion to support the conclusion that Plaintiff could perform occasional operation of hand controls and frequent fingering and handling with the dominant right hand, the inclusion of such limitations in the RFC lacks the support of substantial evidence. *See Holtan v. Kijakazi,* No. 2:22-cv-01222-VCF, 2023 WL 2424648, at *3 (D. Nev. Mar. 9, 2023) (finding that the ALJ erred primarily by simply summarizing the medical evidence without making it clear how the ALJ then translated that evidence into an RFC, noting that it was "particularly concerning because the ALJ did not rely on any of the medical opinions, <u>finding all of the medical opinions of record unpersuasive</u>.") (emphasis in original); *De Gutierrez v. Saul*, No. 1:19-cv-00463-BAM, 2020 WL 5701019, at *6 (E.D. Cal. Sept. 24, 2020) ("Without a medical opinion to support the conclusion that Plaintiff was able to perform" a certain level of work, lift and carry certain weight, or sit, stand or walk for certain periods of time, "the ALJ's RFC lacks the support of substantial evidence.") (citing *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) ("where an ALJ reaches conclusions about claimant's . . . capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence")); *Shipp v. Colvin*, No. CV 13–9468 JC, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) ("Since . . . the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical residual functional capacity assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record.").

### 2.    The Error is Harmless

The Court must now consider whether the ALJ's error was harmless. *Molina*, 674 F.3d at 1115.  Courts look at the record as a whole to determine whether the error alters the outcome of the case. *Id*.; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).  An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted).

The Court finds that the ALJ's error was harmless in this case.  The limitations the ALJ included in the RFC pertaining to Plaintiff's hand and wrist impairments were more restrictive than those to which the medical opinions of record opined (*compare* AR 26 *with* AR 899–901 (Marks), 946 (Wagner), 212–14 (S. Lee), 230–32 (K. Lee)), yet the ALJ found that there would be work available with those more stringent limitations (*see* AR 30–31).  Despite bearing the burden of proving her disability, *see Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), Plaintiff does not specify what additional or more restrictive limitations resulting from her hand and wrist impairments were not considered by the ALJ and not accounted for in the RFC assessment.[6]  Having reviewed the record, the Court finds that the error was inconsequential to the disability determination and therefore does not warrant remand.  *See Lamas v. Saul*, No. 1:19-cv-00852-BAM, 2020 WL 6561306, at *9 (E.D. Cal. Nov. 9, 2020) (holding that although ALJ erred in evaluating a claimant's RFC without support from a medical opinion, such error was harmless where the ALJ found more stringent limitations than any medical opinion).  *See also Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) ("[T]his overinclusion of debilitating factors is harmless simply because if a person can do a job that requires increased concentration, the claimant is also capable of performing work that requires less concentration.").

### B.    The ALJ's Treatment of FNP Marks' Opinion Was Not Erroneous

### 1.    Legal Standard

Plaintiff's claim for DIB is governed by the agency's regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. § 404.1520c.  The

---

[6] Plaintiff suggests that the ALJ should have included an exertional limitation in the RFC on lifting no more than 10 pounds, as opined by FNP Marks.  (Doc. 17 at 13.)  However, this limitation was rejected by the ALJ, and the Court finds no error thereby, for the reasons discussed below.  (*See* Section IV.B., *infra*.)

regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. § 404.1520c(b)(2).  And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions."  20 C.F.R. § 404.1520c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant.  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations.  Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal citations omitted).  Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  *See also id*. § 416.920c(c)(1).  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion.  *See id.* § 404.1520c(c)(3).  Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and

whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

With these legal standards in mind, the Court reviews the consideration of the medical opinion of FNP Marks.

### 2.    Analysis

The ALJ determined that most of the limitations in FNP Marks' opinion were "not persuasive" because they were "not supported by her examinations that show full range of motion of the extremities" and "inconsistent with full strength, normal gait, and near normal lumbar flexion as well as reports of exercising, improvement with treatment, and engaging in activities of daily living without assistance." (AR 29.) The Court concludes that the ALJ properly evaluated the supportability and consistency of FNP Marks' opinion. As an initial matter, the ALJ cited the evidence of "lumbar tenderness, a positive straight leg raising test, mild spurring of the left hip on imaging, and mild disc disease on lumbar imaging," which supported her limitation to occasional stooping and climbing stairs. (AR 29.) The ALJ incorporated these limitations into Plaintiff's RFC. (*See* AR 26.)

As to the remainder of FNP Marks' opinion that was not accounted for in the RFC (*i.e.*, that Plaintiff could sit, stand, and walk less than two hours in an eight-hour day; occasionally lift less than 10 pounds; needs to shift positions at will; could rarely twist, crouch, and climb ladders; had front and overhead reaching limitations bilaterally; would be off task 20% of the workday and absent more than four days per month; and would require unscheduled breaks every 30 minutes to lie down), the ALJ observed that the limitations were not supported by her examination results showing full

16

range of motion in her extremities.  (AR 29.)  A lack of support by FNP Marks' own objective findings, substantiated by the record (*see* AR 766, 820, 961, 1109), was a proper consideration in evaluating the supportability of her opinion.  *See, e.g., Trezona v. Comm'r of Soc. Sec.,* No. 1:21-cv-00792-EPG, 2022 WL 1693493, at *3 (E.D. Cal. May 26, 2022); *Amanda B. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-cv-01507-YY, 2022 WL 972408, at *7 (D. Or. Mar. 31, 2022).

As to consistency, the ALJ found FNP Marks' opinion was generally inconsistent with the other medical evidence, including normal examination results, Plaintiff's improvement with treatment, and her activities of daily living, including exercise.  (AR 29.)  These findings are supported by substantial evidence.  Examination results document normal strength (AR 910–11, 943–45, 1089), and normal gait (AR 944), and near normal flexion range of motion in her lumbar spine without complaints of pain (AR 1089).  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–601 (9th Cir. 1999) (The ALJ may accord an opinion less weight based upon substantial evidence, including "clinical evidence" that the ALJ finds to be conflicting.).  The record also contains instances where Plaintiff reported that treatment was "helping to control her pain" and perform her "daily activity" (AR 959, 1110) and that she was "feeling much better" and "doing well" as a result (AR 962, 1107).  *Cf. Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for [Social Security] benefits.").  Finally, the ALJ noted the inconsistency between FNP Marks' opined limitations and Plaintiff's performance of activities of daily living, including exercise, during the relevant period.  The record documents Plaintiff's use of a stationary bicycle for 30 minutes three to four times per week (AR 737), exercise for 45 minutes four to five times per week (AR 752), walking a few miles per day and use of a home cardio machine (AR 659), and walking four blocks around her neighborhood (AR 943).  It also shows that Plaintiff, by her own account, cooks, cleans, vacuums, dusts, drives, washes dishes, shops, and performs her own activities of daily living without assistance.  (*See* AR 427, 428, 429, 443, 444, 943.)  Such degree of daily activities belies FNP Marks' opined limitations, particularly those directed to Plaintiff's sitting, standing and walking abilities (*see* AR 899–901).  *See Morgan*, 169 F.3d at 601–603 (upholding ALJ decision discounting doctors' opinions based in part on the plaintiff's daily

activities).

In sum, while the medical record reflects that Plaintiff has some physical limitations, these have been accounted for in the RFC.  (*See* AR 28 (discussing physical impairments and limitations included in the RFC).)  It was reasonable for the ALJ to conclude that the further, severe restrictions opined by FRP Marks were unpersuasive considering her own treatment notes and the record as a whole.  That the opinion lacked support and was inconsistent with the medical evidence was not a "cursory finding," as Plaintiff asserts (*see* Doc. 17 at 16), but instead legally sufficient based on the substantial evidence cited.  Moreover, the mere fact that the longitudinal medical record could be interpreted differently, as Plaintiff points out (Doc. 17 at 15), is of no consequence. The Court will not second guess the ALJ's reasonable interpretation—even if the record could give rise to inferences more favorable to Plaintiff.  *See Molina*, 674 F.3d at 1110; *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted).  *See also Gardner v. Barnhart,* 73 F. App'x 193, 195 (9th Cir. 2003) ("[The claimant] also asserts that the ALJ took medical reports out of context and relied on them as such in making his decisions.

The ALJ weighed all of the evidence he credited.  The medical evidence in this case is extensive and could be interpreted in various ways.  The ALJ interpreted it in a reasonable manner. When the evidence presented could support either affirming or reversing the Commissioner's conclusions, this court cannot substitute its own judgment for that of the Commissioner.") (citing *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999)); *Batson v. Comm'r Soc. Sec. Admin*., 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").

**C.      The ALJ Properly Found Plaintiff Less Than Fully Credible**

**1.      Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an

underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[7] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### 2.    Analysis

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 27.) In view of this finding,

---

[7] The Court rejects the Commissioner's contention that a lesser legal standard applies. (*See* Doc. 21 at 5 n.1.)

the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.

Here, the ALJ identified at least three valid reasons for discrediting Plaintiff's testimony.

a.    Objective medical evidence

First, the ALJ observed that "[f]indings of normal range of motion and full strength of the extremities as well as normal gait on multiple examinations suggest[] that, in spite of some limitations due to her symptoms, [Plaintiff] retains greater ability than alleged." (AR 28.)  While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 680, 681 (9th Cir. 2005). *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan*, 169 F.3d at 600. "When objective medical evidence in the record is ***inconsistent*** with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (collecting cases).

The ALJ's reliance on "multiple examinations" showing normal range of motion in her extremities (including bilateral wrists and fingers) (AR 766, 820, 910–11, 961, 1109), full strength (including grip strength) (AR 845, 910–11, 943–45, 1089), and normal gait (AR 944) is supported by the record.  Plaintiff does not dispute this evidence.  Instead, she asserts that the evidence supports greater limitations because of her complaints of hand pain and prolonged standing.  (*See* Doc. 17 at 18.)  Plaintiff's disagreement, however, lies with the ALJ's interpretation of the medical evidence, which on this record the Court will not disturb.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).  The Court finds the ALJ's conclusion that the evidentiary record does not support, and in fact undermines, Plaintiff's subjective statements is supported by substantial evidence.  The ALJ's determination that Plaintiff's complaints are inconsistent with the medical evidence is therefore a clear and convincing reason for discounting her subjective symptom testimony.  *See Molina*, 674 F.3d at 1113 (concluding that the ALJ properly discredited claimant testimony based on inconsistencies with objective medical evidence); 20 C.F.R. § 404.1529(c)(3).

b.        Reported activities

Second, the ALJ found Plaintiff's reported activities "detract from [her] allegations." (AR 28, 29.) The decision cited Plaintiff's statements that she exercises with a "stationary bike, treadmill, and cardio machine, in addition to walking a few miles per day" and that she can "vacuum, clean the bathroom and kitchen, cook, shop, and drive without assistance, and [walk] around the neighborhood approximately 4 blocks." (AR 28 (citing AR 427, 428, 429, 443, 444, 659, 737, 752 943).) While "'the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [their] credibility as to [their] overall disability,'" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)) (alteration in original), a claimant's testimony may be discredited "when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1113 (citations omitted); *see also Orn*, 495 F.3d at 639 (citing *Burch*, 400 F.3d at 681; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Even if the claimant experiences some difficulty or pain, her daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Plaintiff does not address, much less contest, the ALJ's reasonable determination that her ability to participate in certain activities "indicates that she retains more ability than alleged" (AR 28–29), which the Court finds supported by the record, as discussed above. (*See* Section IV.B.2., *supra*.) The ALJ therefore properly discredited Plaintiff's testimony that her impairments render her completely unable to work, based on her reported activities in the record. *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (plaintiff's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" provided "substantial evidence" to support the ALJ's decision.); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping").

21

c.       Improvement with treatment

Third, the ALJ found the record showed "improvement with treatment." (AR 28.)  In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when their symptoms can be controlled by treatment and/or medication.  *See* 20 C.F.R. § 404.1529(c)(3)(iv)– (v); *see also Warre*, 439 F.3d at 1006.  As mentioned above, *see* Section IV.B.2, there is substantial evidence in the record documenting Plaintiff's reports that treatment was "helping to control her pain" and perform her "daily activity" (AR 959, 1110) and that she was "feeling much better" and "doing well" as a result (AR 962, 1107).  While Plaintiff may disagree with the ALJ's interpretation (*see* Doc. 17 at 18), because there is substantial evidence of Plaintiff's improvement with treatment, such is another clear and convincing reason for not finding Plaintiff's subjective complaints fully credible. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (the ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment).

d.       Receipt of unemployment benefits

Finally, the ALJ observed that Plaintiff received unemployment insurance benefits from the second quarter of 2020 through the second quarter of 2021.  (AR 29 (citing AR 408–409).)  Though receipt of unemployment benefits is not dispositive of a person's capacity to perform work, it can conflict with assertions of an inability to work if the receipt of unemployment benefits was premised on an individual's attestation that they were ready, willing, and able to work.  *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (ALJ validly discounted claimant's credibility, in part, because he "received unemployment insurance benefits [after being laid off] (apparently considering himself capable of work and holding himself out as available for work)").  Here, however, the ALJ did not explain whether the unemployment insurance benefits were related to Plaintiff's last employment, pandemic assistance, or otherwise, and further did not indicate whether she attested that she was ready, willing, and able to perform full-time work consistent with her RFC (as opposed to part-time, sheltered, or sedentary work).  The Court need not determine whether this failure was erroneous because the ALJ provided other valid reasons for discrediting

Plaintiff's subjective complaints, discussed above.  *See Reyes v. Berryhill*, 716 F. App'x 714, 714 (9th Cir. 2018) (where ALJ provided valid reasons for discounting claimant's testimony, "[a]ny error in other reasons provided by the ALJ was harmless"); *Batson*, 359 F.3d at 1197; *Williams v. Comm'r, Soc. Sec. Admin.*, Civ. No. 6:16–cv–01543–MC, 2018 WL 1709505, *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall . . . determination.").

In sum, the Court finds that the ALJ provided at least three clear and convincing reasons supported by substantial evidence to discredit Plaintiff's reports regarding the extent of her limitations.

### V.    CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:    __**May 6, 2026**__                    ____/s/ *Sheila K. Oberto*____
                                UNITED STATES MAGISTRATE JUDGE